UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

**PEGGY MCCLELLAND,**

        **Plaintiff,**

**v.**                                            **Case No:  6:11-cv-1444-Orl-36TBS**

**MEDTRONIC, INC.,**

        **Defendant.**

---

**ORDER**

This cause comes before the Court on Defendant Medtronic, Inc.'s ("Defendant") Dispositive Motion to Dismiss Plaintiff Peggy McClelland's ("Plaintiff") Second Amended Complaint ("Motion to Dismiss") (Doc. 45). Plaintiff filed a response in opposition to Defendant's Motion to Dismiss ("Response") (Doc. 46), to which Defendant replied (Doc. 52). For the following reasons, Defendant's Motion to Dismiss will be granted.

**I.    BACKGROUND**

    **A.    Statement of Facts[1]**

Breanne A. McClelland (the "Decedent") was a resident of Orange County, Florida until her death on August 11, 2011. Doc. 44, ¶ 1. Plaintiff is the Decedent's mother and the duly appointed personal representative of the Decedent's estate. *Id.* at ¶ 2. Defendant is a corporation organized under the laws of Minnesota, with its principal place of business in that State. *Id.* at ¶ 4; Doc. 1, ¶ 12. Defendant "researches, develops, tests, manufactures, markets, promotes,

---

[1] The following statement of facts is derived from Plaintiff's Second Amended Complaint (Doc. 44), the allegations of which the Court must accept as true in ruling on the instant Motion to Dismiss. *Linder v. Portocarrero,* 963 F.2d 332, 334 (11th Cir. 1992).

advertises, and sells medical devices." Doc. 44, ¶ 6. Defendant's largest business segment, Cardiac Rhythm Disease Management, develops products that restore and regulate heart rhythm and improve the heart's pumping function. *Id.*

In March 2004, Defendant received premarket approval ("PMA") from the U.S. Food and Drug Administration ("FDA") for the EnPulse pacemaker Model E1DR21 (the "E1DR21"). *Id.* at ¶ 8. On or about April 30, 2004, the E1DR21 was surgically implanted in the Decedent. *Id.* at ¶ 9. Plaintiff alleges that prior to 2009, Defendant became aware that several of its implantable pulse generators, including the E1DR21, were defective in that they could "lock-up and inappropriately trigger ERI/RRT mode in the pacemakers," leading to "intense cardiac symptoms and fail[ure] to properly regulate cardiac rhythm." *Id.* at ¶ 10.

On July 22, 2009, the Decedent consulted with her cardiologist about recurrent heart palpitations. *Id.* at ¶ 13. On that date, her cardiologist interrogated and reprogrammed the Decedent's E1DR21, in part due to evidence of atrial under-sensing. *Id.* On August 10, 2009, the Decedent informed her cardiologist's office that she was once again suffering from recurrent heart palpitations. *Id.* at ¶ 14. The next day, the Decedent visited with her cardiologist, who again interrogated and reprogrammed her E1DR21. *Id.* at ¶ 15. Upon returning home from the procedure, the Decedent continued experiencing chest pains and heart palpitations. *Id.* at ¶ 16. Within hours, the Decedent became lethargic and weak and was gasping for air, which prompted Plaintiff to drive her to the hospital. *Id.* On the way there, the Decedent became unresponsive and died shortly thereafter. *Id.* On August 12, 2009, one of Defendant's representatives performed an interrogation of the Decedent's E1DR21 and determined that her pacemaker had failed her due to certain deficiencies. *Id.* at ¶ 17. Approximately eighteen months after the Decedent's death, Defendant issued a recall of many models of its implantable pulse generators,

including the E1DR21. *Id.* at ¶ 18. After this recall, Defendant released a software update to reprogram the defective devices that were recalled. *Id.*

### B. Procedural History

On August 4, 2011, Plaintiff filed a Complaint in the Circuit Court of the Ninth Judicial Circuit in and for Orange County, Florida, asserting state law claims for negligence and strict liability against Defendant. *See* Doc. 2. Defendant subsequently removed the case to this Court based on diversity jurisdiction under 28 U.S.C. § 1332. *See* Doc. 1. Thereafter, Plaintiff filed an Amended Complaint against Defendant asserting state law claims for negligence per se and failure to warn. *See* Doc. 20. Defendant filed a motion to dismiss the Amended Complaint, to which Plaintiff responded. *See* Docs. 24, 26. On September 27, 2012, this Court entered an Order granting Defendant's motion to dismiss, holding that Plaintiff had failed to state a claim upon which relief could be granted, and that Plaintiff's claims were barred by express and implied preemption. *See* Doc. 43. However, the Court granted Plaintiff leave to file a Second Amended Complaint, noting that "a narrow gap exists for a plaintiff's state law claim if it is to avoid express or implied preemption. . . ." *Id.* at 13.

On October 11, 2012, Plaintiff filed her Second Amended Complaint, asserting a single claim for state law negligence. *See* Doc. 44, p. 7. Plaintiff alleges that Defendant had a duty to notify the FDA of defects in the E1DR21 which could cause or contribute to death or serious injury, and that Plaintiff breached this duty and violated federal laws and regulations by "failing to promptly and accurately report to the FDA incidents and problems with the EnPulse E1DR21 that occurred after the device received [PMA]." *Id.* at ¶¶ 28–32. Plaintiff further alleges that if Defendant had complied with its duty to notify the FDA, the E1DR21 would have been recalled prior to the death of the Decedent. *Id.* at ¶ 34. The instant Motion to Dismiss followed.

3

## II. STANDARD OF REVIEW

To survive a motion to dismiss, a pleading must include a "short and plain statement of the claim showing that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009) (quoting Fed. R. Civ. P. 8(a)(2)). Labels, conclusions and formulaic recitations of the elements of a cause of action are not sufficient. *Id.* at 678 (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Mere naked assertions, too, are not sufficient. *Id.* A complaint must contain sufficient factual matter, which, if accepted as true, would "state a claim to relief that is plausible on its face." *Id.* (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The Court, however, is not bound to accept as true a legal conclusion stated as a "factual allegation" in the complaint. *Id.* Therefore, "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* at 679.

## III. DISCUSSION

### A. Statutory Framework of the Medical Device Amendments

The regulation of medical devices entering the market is governed by the Federal Food, Drug, and Cosmetic Act ("FDCA"), 21 U.S.C. § 301 *et seq*. The FDCA provides that the enforcement of violations "shall be by and in the name of the United States." 21 U.S.C. § 337(a). In 1976, Congress passed the Medical Device Amendments of 1976 ("MDA"), which amended the FDCA and imposed a regime of detailed federal oversight. *See* 21 U.S.C. § 360c *et seq*. The new regulatory regime separated medical devices into three classes based on the risks they pose to the public. *Id.*; *Riegel v. Medtronic, Inc.*, 552 U.S. 312, 316 (2008); *United States v. Endotec, Inc.*, 563 F.3d 1187, 1189–90 (11th Cir. 2009). Class I devices are those that present

no unreasonable risk of illness or injury and are subject only to "general controls," such as labeling requirements. *Riegel*, 552 U.S. at 316 (citing 21 U.S.C. § 360c(a)(1)(A)). Class II devices possess a greater potential for danger and thus warrant "special controls" such as performance standards and postmarket surveillance measures. *Id.* at 316–17 (citing 21 U.S.C. § 360c(a)(1)(B)). The strictest regulation, Class III, is reserved for devices for which a less stringent classification could not provide reasonable assurance of safety and effectiveness. *Id.* at 317 (citing 21 U.S.C. § 360c(a)(1)(C)).

### 1.     *Premarket Approval*

All Class III devices, such as the E1DR21 manufactured by Defendant, must undergo the "rigorous" PMA process administered by the FDA. *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 477 (1996). The PMA process begins with the manufacturer submitting a multi-volume application, detailing a variety of information including the safety and efficacy of the device. *Riegel*, 552 U.S. at 317–18 (citing 21 U.S.C. § 360e(c)(1)). After the FDA completes its review, PMA is granted only if there is a "reasonable assurance" of the device's "safety and effectiveness." *Id.* at 318 (citing 21 U.S.C. § 360e(d)). The FDA may also condition approval on adherence to performance standards, restrictions upon sale or distribution, or other compliance requirements. *Id.* at 319 (citing 21 C.F.R. §§ 861.1(b)(3), 814.82).

Even after PMA is granted, manufacturers are forbidden to make changes in design specifications, manufacturing processes, labeling, or any other attribute that would affect safety or effectiveness, without FDA permission. *Id.* (citing 21 U.S.C. § 360e(d)(6)(A)(i)). If a manufacturer wishes to make such a change to a device, it must submit an application for supplemental PMA, which is evaluated under identical criteria as the initial application. *Id.* (citing 21 U.S.C. § 360e(d)(6)). Moreover, after PMA, manufacturers are subject to reporting

requirements. *Id.* (citing 21 U.S.C. § 360i). These include the obligation to inform the FDA of new clinical investigations or scientific studies, 21 C.F.R. § 814.84(b)(2), and to report incidents where the device may have caused or contributed to death or serious injury, 21 C.F.R. § 803.50(a). *Riegel*, 552 U.S. at 319.

### 2. *Preemptive Effect of the MDA*

Until the statutory enactment of the MDA, the introduction of new medical devices was left largely for the states to supervise as they saw fit. *Id.* at 315. However, the MDA "swept back some state obligations and imposed a regime of detailed federal oversight." *Id.* at 316. The MDA's express preemption provision provides that:

> [N]o State or political subdivision of a State may establish or continue in effect with respect to a device intended for human use any requirement—
>
> (1) which is different from, or in addition to, any requirement applicable under this chapter to the device, and
>
> (2) which relates to the safety or effectiveness of the device or to any other matter included in a requirement applicable to the device under this chapter.

21 U.S.C. § 360k(a). In *Riegel*, the Supreme Court suggested that the MDA's preemption of certain state obligations in favor of more detailed federal oversight is justified because of the harm that would be caused by stifling innovation in medical devices if "juries were allowed to apply the tort law of 50 States to all innovations." 552 U.S. at 326. The Supreme Court also noted that "State tort law that requires a manufacturer's [device] to be safer, but hence less effective, than the model the FDA has approved disrupts the federal scheme." *Id.* at 325.

Accordingly, "[t]he MDA expressly pre-empts only state requirements different from, or in addition to, any requirement applicable ... to the device under federal law." *Wolicki-Gables v. Arrow Int'l, Inc.*, 634 F.3d 1296, 1300 (11th Cir. 2011) (quoting *Riegel*, 552 U.S. at 321). However, because § 360k(a) only preempts state requirements to the extent that they are

"different from, or in addition to the requirements imposed by federal law," state law claims premised on violations of FDA regulations that "parallel," rather than add to federal requirements are not preempted. *Id.* at 1300 (quoting *Riegel*, 552 U.S. at 330). In *Wolicki-Gables*, the Eleventh Circuit explained the parallel claim principle as follows:

> "In order for a state requirement to be parallel to a federal requirement, and thus not expressly preempted under § 360k(a), the plaintiff must show that the requirements are 'genuinely equivalent.' State and federal requirements are not genuinely equivalent if a manufacturer could be held liable under the state law without having violated the federal law."

634 F.3d at 1300 (quoting *McMullen v. Medtronic, Inc.*, 421 F.3d 482, 489 (7th Cir. 2005)).

### B.   Adequacy of Plaintiff's Second Amended Complaint

Plaintiff's Second Amended Complaint asserts a single claim of negligence. *See* Doc. 44, p. 7. Plaintiff alleges that Defendant "fail[ed] to promptly and accurately report to the FDA incidents and problems with the EnPulse E1DR21 that occurred after the device received [PMA]," in violation of 21 U.S.C. § 360i, 21 C.F.R. § 803.50(a), 21 C.F.R. § 806.10(a), 21 C.F.R. § 814.84(a), and 21 C.F.R. §§ 820.198(a) & (c). *Id.* at ¶ 30. Although Plaintiff's Second Amended Complaint alleges that Defendant "had a duty to notify the FDA," her Response contends that "the essence of Plaintiff's claim is not that the defendant breached a duty to the FDA, but that it breached a duty to [the Decedent], who was in the foreseeable zone of risk created by [Defendant]—namely, the duty to provide an adequate warning of the dangers of its product, which in this case paralleled its duty to comply with the conditions of its PMA." *Id.* at ¶ 29; Doc. 46, p. 11.

Defendant argues that to the extent that Plaintiff alleges a breach of a duty *owed to the Decedent*, such a claim is expressly preempted by 21 U.S.C. § 360k(a). *See* Doc. 52, pp. 1–2. To the extent that Plaintiff alleges a breach of a duty *owed to the FDA*, Defendant argues that such a claim is impliedly preempted by 21 U.S.C. § 337(a), as interpreted by the United States

7

Supreme Court in *Buckman Co. v. Plaintiffs' Legal Comm.*, 531 U.S. 341 (2001). *See* Doc. 52, pp. 2–4.

    *1.*    *Express Preemption*

In *Riegel*, the Supreme Court established a two-prong test for determining whether a state claim is preempted under the MDA: (1) determine whether the federal government has established requirements applicable to the medical device; and (2) if so, determine whether the state law claims are based upon requirements with respect to the device that are different from, or in addition to, the federal ones, and that relate to safety and effectiveness. 552 U.S. at 321–22. The *Riegel* Court also held that PMA necessarily imposes device-specific "requirements" under the MDA. *Id.* at 322–23. Therefore, medical devices approved through PMA, such as the E1DR21 manufactured by Defendant, automatically satisfy the first prong of the *Riegel* test. *See id.*; *Wolicki-Gables*, 634 F.3d at 1301. Therefore, the question is whether Plaintiff's negligence claim would impose state law requirements that are different from, or in addition to, those under the federal regime.

In her Response, Plaintiff asserts that "the essence of Plaintiff's claim is not that the defendant breached a duty to the FDA, but that it breached a duty to [the Decedent], who was in the foreseeable zone of risk created by Medtronic—namely, the duty to provide an adequate warning of the dangers of its product, which in this case paralleled its duty to comply with the conditions of its PMA." Doc. 46, p. 11. For the same reasons discussed in the Court's previous Order dismissing Plaintiff's Amended Complaint, such a claim would impose requirements that are different from, or in addition to, the federal requirements under the MDA. *See* Doc. 43, pp. 9–11. The MDA and its implementing regulations set forth a comprehensive scheme under which a device manufacturer must submit reports to the FDA regarding incidents where the

device may have contributed to a death or serious injury. *See* 21 U.S.C. § 360i, 21 C.F.R. § 803.50; 21 C.F.R. § 814.84(a). Plaintiff has not pointed to any statute or regulation which imposes a duty on the manufacturer to inform *patients* about such incidents. The Court reiterates its position from its previous Order:

> Under Plaintiff's theory of liability, Defendant would be required to provide information to . . . patients beyond those on the device's labeling. Accordingly, the state and federal requirements are not "genuinely equivalent" because Defendant could be held liable under the state law without having violated the federal law.

Doc. 43, p. 11 (quoting *Wolicki-Gables*, 634 F.3d at 1300). Therefore, Plaintiff's negligence claim is expressly preempted by § 360k(a) because it would impose state law requirements that are different from, or in addition to, the federal requirements under the MDA.

2. *Implied Preemption*

In addition to preempting non-parallel claims, the FDCA provides that all actions to enforce FDA requirements "shall be by and in the name of the United States." 21 U.S.C. § 337(a). In *Buckman*, the United States Supreme Court construed § 337(a) as impliedly preempting suits by private litigants "for noncompliance with the medical device provisions." 531 U.S. at 349 n.4. The Eighth Circuit has explained the interaction between *Riegel* and *Buckman* as follows:

> *Riegel* and *Buckman* create a narrow gap through which a plaintiff's state-law claim must fit if it is to escape express or implied preemption. The plaintiff must be suing for conduct that *violates* the FDCA (or else his claim is expressly preempted by § 360k(a)), but the plaintiff must not be suing *because* the conduct violates the FDCA (such a claim would be impliedly preempted under *Buckman*).

*In re Medtronic, Inc., Sprint Fidelis Leads Prod. Liab. Litig.*, 623 F.3d 1200, 1204 (8th Cir. 2010) (internal citations and quotations omitted); *see also In re Medtronic, Inc. Sprint Fidelis Leads Prod. Liab. Litig.*, 592 F. Supp. 2d 1147, 1161 (D. Minn. 2009) ("[W]hen Sections 337(a)

9

and 360k(a)—as construed in *Buckman* and *Riegel*, respectively—are read together, nearly all types of claims concerning FDA-approved medical devices are preempted[.]").

In *Sprint Fidelis Leads*, the plaintiffs alleged that the defendant had failed to file timely adverse event reports, as required by federal regulations. 623 F.3d at 1205. The district court, ruling on the defendant's motion to dismiss, observed that "what Plaintiffs are really alleging is that [the defendant] violated the FDCA by failing to inform the FDA in a timely fashion of adverse . . . events. Such a claim necessarily fails, because no private right of action exists under the FDCA. Plaintiffs cannot make an end run around this rule by recasting violations of the FDCA as violations of state common law." *Sprint Fidelis Leads*, 592 F. Supp. 2d at 1160–61 (internal citations omitted). Accordingly, the district court dismissed the claims as impliedly preempted. *Id*. The Eighth Circuit affirmed, holding that "these claims are simply an attempt by private parties to enforce the MDA, claims foreclosed by § 337(a) as construed in *Buckman*." *Sprint Fidelis Leads*, 623 F.3d at 1205–06.

Similarly here, to the extent that Plaintiff's negligence claim can be construed as alleging a breach of duty owed by Defendant to the FDA, such a claim is impliedly preempted by § 337(a). The thrust of Plaintiff's claim is that Defendant violated the FDCA and its implementing regulations by failing to inform the FDA about incidents where the E1DR21 may have contributed to a death or serious injury. *See* Doc. 44, ¶¶ 28–32. As with Plaintiff's claims in her Amended Complaint for negligence *per se* and failure to warn, Plaintiff's attempt to recast a claim for violation of the FDCA as a state-law negligence claim is impliedly barred by § 337(a). *See* Doc. 43, pp. 11–12; *Sprint Fidelis Leads*, 592 F. Supp. 2d at 1160–61. "It is clear that the United States rather than private litigants are authorized to file suit for noncompliance with the medical device provisions." Doc. 43, p. 12; *see Ellis v. C.R. Bard, Inc.*, 311 F.3d 1272, 1284

n.10 (11th Cir. 2002) ("[N]o private right of action exists for a violation of the FDCA.") Accordingly, Plaintiff may not assert a claim based on Defendant's alleged breach of a duty to file timely reports with the FDA. *See Sprint Fidelis Leads*, 623 F.3d at 1205–06.

## IV.   CONCLUSION

After the Court dismissed Plaintiff's Amended Complaint, the Court granted Plaintiff leave to file a Second Amended Complaint, acknowledging that "pursuant to *Riegel* and *Buckman*, a narrow gap exists for a plaintiff's state law claim if it is to avoid express or implied preemption." Doc. 43, p. 13. Having now again determined that Plaintiff's claim is expressly and impliedly preempted, the Court believes that any further opportunities to amend would prove futile. Accordingly, the Court will dismiss the Second Amended Complaint with prejudice.

Accordingly, it is hereby **ORDERED** and **ADJUDGED**:

1. Defendant Medtronic, Inc.'s Dispositive Motion to Dismiss Plaintiff's Second Amended Complaint (Doc. 45) is **GRANTED**.

2. Plaintiff Peggy McClelland's Second Amended Complaint (Doc. 44) is **DISMISSED with prejudice**.

3. The Clerk is directed to **terminate** all pending motions and **close** this file.

**DONE** and **ORDERED** in Orlando, Florida on May 16, 2013.

*Charlene Edwards Honeywell*
Charlene Edwards Honeywell
United States District Judge

Copies furnished to:

Counsel of Record
Unrepresented Parties

11